# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wilshire Insurance Company,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Patrick Yager and Javier Lopez,<br><br>　　　　Defendants. | No. CV-16-00192-TUC-JAS<br><br>**ORDER** |
| Patrick Yager and Javier Lopez,<br><br>　　　　Defendants/Counter-Plaintiffs,<br><br>v.<br><br>Wilshire Insurance Company,<br><br>　　　　Plaintiffs/Counter-Defendants. | |
| Patrick Yager,<br><br>　　　　Third-Party Plaintiff,<br><br>v.<br><br>Girard Insurance Services, Inc.; Ira Lee Girard and Mary Ann Girard,<br><br>　　　　Third-Party Defendants. | |

Pending before the Court are numerous motions in limine filed by both parties, and Defendants' motion to bifurcate trial  The motions are discussed below.[1]

**BACKGROUND**

This case involves an insurance dispute that arises from an automobile accident in Tucson, Arizona. On November 12, 2014, Javier Lopez was driving his 2004 Econoline Van ("Van"). The Van was involved in an accident with a motorcycle driven by Patrick Yager. Yager suffered various physical injuries in the accident. It is disputed as to who was at fault in the accident. Yager argued that Lopez made an unsafe lane change and collided with Yager. Defendants argued that Yager had been in three other accidents, had been required to go to driving school twice for speeding, that he has driven his motorcycles at speeds of 190 miles an hour, that Yager lacks any memory of the accident, and that witnesses to the accident indicated that Yager caused the accident.

After the accident, Yager filed a lawsuit in Pima County Superior Court against Lopez alleging that he was at fault in the accident; in addition, Alonso Pastor was also named in the lawsuit ("State Lawsuit"). Pastor was named in the State Lawsuit as he was the named insured under a commercial auto liability policy with Wilshire Insurance Company ("Wilshire"); the Van that Lopez owned was added as a covered auto under Pastor's previously existing policy with Wilshire, but Lopez was not listed as a named insured under that policy (the "Policy").[2] There was no evidence reflecting that Wilshire was aware of Lopez's existence prior to the accident in question; Wilshire was only informed of Lopez's existence after the accident had already occurred. Likewise, Girard (i.e., the insurance agency that actually procured the liability insurance policy on behalf of Pastor) also argued that it was never aware of Lopez's existence prior to the accident in question, and that it was only informed of Lopez's existence after the accident had already

---

[1] As the Court would not find oral argument helpful, oral argument is denied. *See Mahon v. Credit Bureau of Placer County, Inc.*, 171 F.3d 1197, 1200-1201 (9th Cir. 1999).

[2] Pastor had a commercial shuttle business; although Lopez did not work for Pastor in any capacity, and Lopez owned the Van that Lopez himself used to shuttle passengers, Pastor added Lopez's Van to his preexisting Policy.

occurred;[3] this issue was disputed by Yager who introduced evidence that Girard may have been aware of Lopez's existence prior to the accident and therefore failed to properly procure liability insurance for him from Wilshire.

Lopez tendered his defense to Wilshire pursuant to the Policy issued to Pastor. In March of 2015, Wilshire retained counsel to defend Lopez in the State Lawsuit. However, by August of 2015, Wilshire sent Lopez a reservation of rights letter informing him that while Wilshire would continue to provide counsel to Lopez in the State Lawsuit, it was doing so under a reservation of rights because although Lopez's Van was listed as a covered auto under Pastor's Policy, Lopez was not an insured under the Policy (i.e., one has to be both an "insured" driving a "covered auto" for liability coverage to apply).

Yager's claims in the State Lawsuit against Pastor were dismissed at summary judgment, and that dismissal was affirmed on appeal. The State Lawsuit against Lopez ended when Lopez entered into a *Morris* agreement with Yager whereby Lopez assigned all of his rights against Wilshire and Girard to Yager; pursuant to the *Morris* agreement, the parties stipulated to a judgment of $1.5 million, and Yager agreed not to seek recovery of the judgment, or any other form of damages, against Lopez. Thereafter, Wilshire filed the instant declaratory judgment action against Yager and Lopez in this Court seeking a declaration that Wilshire owed no duty to indemnify. In response, Yager asserted claims for breach of contract and bad faith against Wilshire, and claims against Girard stemming from its failure to properly procure insurance coverage for Lopez. This Court dismissed all of the claims against Wilshire at summary judgment, but Yager's claims against Girard remain as this Court denied summary judgment as to Girard.

## ADMISSIBILITY STANDARDS

As pertinent to the motions in limine, Fed. R. Evid. 402 provides: "Relevant

---

[3] As discussed at summary judgment, the evidence reflected that Pastor and Lopez exclusively communicated with only Girard in relation to the Policy. To the extent that Girard later communicated with Statewide Insurance Company ("Statewide" – an agent of Wilshire) to procure Wilshire insurance coverage, there also was no evidence that Statewide was aware of Lopez's existence prior to the accident. There was no evidence that Girard was Wilshire's agent, and there was no evidence that Girard informed Wilshire or Statewide of Lopez's existence prior to the accident.

evidence is admissible unless any of the following provides otherwise: • the United States Constitution; • a federal statute; • these rules; or • other rules prescribed by the Supreme Court. Irrelevant evidence is not admissible." Fed. R. Evid. 401 defines relevant evidence as follows: "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 403 provides that: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." As to experts, Fed. R. Evid. 702 states that "[a]witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

**DISCUSSION: MOTIONS IN LIMINE**

**Docs. 261, 256, 258: Expert Carmine Cornelio, Fault, Reasonableness of the Settlement Agreement**

Girard seeks to exclude the testimony of expert Carmine Cornelio. *See* Doc. 261. Cornelio's proposed testimony at trial pertains to his expert opinion that the *Morris* agreement stipulating to a $1.5 million judgment against defendants was reasonable. Girard, however, argues that Cornelio's testimony is unreliable and subject to exclusion because he did not have an adequate basis to form his opinion. For example, Girard argues that Yager only provided Cornelio with "cherry-picked" information to support the $1.5 million judgment, but failed to provide Cornelio with: the pleadings and discovery from the underlying lawsuit, Yager's actual medical records and bills, statements from eye witnesses, deposition testimony of Javier Lopez, and evidence of Yager's second surgery and lost wage claims. In addition, Girard argues that at his deposition, Cornelio admitted

that the information he was provided was limited, that the information withheld would benefit the defense position, and that he not comfortable with parts of his opinion in light of the withheld information. Nonetheless, to support his opinion, Cornelio specifically reviewed: Yager's medical records from the hospital, the rehabilitation hospital and his treating orthopedic doctor; Yager's policy limit demand and attachments including a summary of the medical billing; evaluations of the case from Lopez's attorney to the insurance company; notes from the adjuster regarding value of the case; the offer of judgment and judgment; Yager's responses to summary judgment; the police report regarding the accident; photos taken by the police at the scene of the accident and photos of Yager's injuries; the letter from Lopez's attorney to the insurance company transmitting the offer of judgment and indicating that this is a liability case with damages that could exceed the policy limits; portions of Yager's deposition; and other related documents from Lopez's attorney's file. Based on this information, Cornelio's expert report opined that the value of the case was between one and two million dollars, and he reaffirmed that this was still his valuation of the case at his deposition (even after Defendants' presented him with additional information). The Court finds that there is a sufficient basis to support Cornelio's expert opinion, and Girard's motion to exclude his expert testimony (Doc. 261) is denied.[4]

Yager seeks to prevent Girard from impeaching Cornelio with prior public and private censures he received while he was a judge with the Pima County Superior Court. *See* Doc. 256. Yager argues that such impeachment is irrelevant, unduly prejudicial, and improper character impeachment. Girard argues, however, that if Cornelio testifies as to his prior history as a judge, then Girard should be allowed to impeach him with the censures in question. Girard argues that Yager undoubtedly chose Cornelio as his expert to use the prestige of the office to impact the jury inasmuch as the jurors may give undue weight to his opinion because they may believe that judges are fair, unbiased, and experts in the law.

---

[4] To the extent Girard states that the reasonableness of the *Morris* agreement depends on how much Lopez could actually pay out of his own funds, the Court rejects this argument as it is a misstatement of the law. *See Himes v. Safeway Ins. Co.*, 205 Ariz. 31, 42 (Ct. App. 2003).

As such, Girard argues that it should be able to question him as he has been censured for being biased during mediations, and that of the 32 available votes evaluating whether he meets the standards for being a judge, 27 of his peers voted that he "does not meet the standards" of judges, and he only received 4 votes for "meeting standards" of judges. The Court agrees with Girard's position. Cornelio's expertise can be established without him testifying as to being a judge in the past; rather, he can establish his expertise through testimony reflecting that he practiced as an attorney for many years (including personal injury litigation), and that he has also conducted hundreds of settlement conferences. However, if Yager has Cornelio testify as to his history of being a judge, Girard will be allowed to cross-examine him as to the discipline and censure he received related to being a judge.

Cornelio's expert opinion is also implicated in Yager's motion to preclude any reference to his comparative fault in the accident with Lopez. *See* Doc. 258. Yager primarily argues that there is no evidence of comparative fault, that Lopez is precluded from denying that he caused the accident pursuant to A.R.S. § 13-807 because he pled guilty to making an unsafe lane change in relation to the accident,[5] and that liability can not be disputed after Lopez's acceptance of fault in the *Morris* agreement. While § 13-807 states that a "defendant who is convicted in a criminal proceeding is precluded from subsequently denying in any civil proceeding brought by the victim . . . the essential allegations of the criminal offense of which he was adjudged guilty," the Arizona Court of Appeals has held that § 13-807 does not necessarily bar a defendant in a civil action from raising affirmative defenses such as contributory negligence and comparative fault as these generally are not recognized as defenses to criminal conduct which deny required allegations of the criminal offense. *See Williams v. Baugh*, 214 Ariz. 471, 474 (Ct. App. 2007). As to Yager's fault, Girard seeks to question the reasonableness of the *Morris*

---

[5] The Court notes that Yager's motion does not attach any documentation reflecting that Lopez pled guilty and that he was convicted of a particular crime. To the extent that Yager attached a police report to the motion, the Court notes that the officer was not a witness to the accident, the officer checked some boxes on a fill-in-the-blank form reflecting his conclusions, and that the officer's conclusions are not supported by any substantive factual information contained in the attached report.

- 6 -

agreement and Cornelio's expert opinion that the *Morris* agreement in question stipulating to a $1.5 million judgment is reasonable. For example, during his deposition, when Cornelio was confronted with information reflecting that Yager may have been comparatively at fault in the accident,[6] Cornelio conceded that Yager provided him only limited information, that Yager did not provide him with information as to his comparative fault, that the information Yager provided favored Yager's position, the previously undisclosed information presented at the deposition could favor Defendants' position, and that he was uncomfortable with some of his expert opinions in light of the new information. *See* Doc. 268, Ex. B-Cornelio's Deposition: (p. 135, line 1-6: "Q: Are you still comfortable with the statement, in your opinion, that your opinion is based upon the presumption that this was a case in which [Yager] has little or no comparative fault? [Cornelio:] . . . no."); p. 55, line 24 to p. 56, line 3: "Q: As you are sitting here today, having seen some new information [today at the deposition], are you still comfortable with your opinion that a $1.5 million stipulated judgment was reasonable . . . [Cornelio:] I don't know."). Furthermore, in light of these issues, the fact that Lopez may have admitted fault in the *Morris* agreement, does not bar Girard from attacking the reasonableness of the *Morris* agreement in this case. *See, e.g.*, *United Services Automobile Association v. Morris*, 154 Ariz. 113, 120 (1987) ("We recognize . . . that an insured being defended under a reservation might settle for an inflated amount or capitulate to a frivolous case merely to escape exposure or further annoyance . . . the [stipulated] 'judgment' does not purport to be an adjudication on the merits; it only reflects the settlement agreement. It is also evident that, in arriving at the settlement terms, the [insureds] would have been quite willing to agree to anything as long as plaintiff promised them full immunity . . . [N]either the fact nor amount of liability to the claimant is binding . . . unless . . . [the claimant] can show that the settlement was reasonable and prudent . . . The test as to whether the settlement was reasonable and prudent is what a reasonably prudent person in the insureds' position

---

[6]For instance, Cornelio was presented with information reflecting that Lopez was not speeding at the time of the accident, and that Yager may have been traveling at an excessive rate of speed at the time of the accident.

would have settled for on the merits of the claimant's case . . . This involves evaluating the facts bearing on the liability and damage aspects of claimant's case, as well as the risks of going to trial."); *Himes v. Safeway Insurance Company*, 205 Ariz. 31, 39-40 (Ct. App. 2003) ("[W]hat is the standard to determine the extent to which a stipulated settlement is reasonable? . . . [T]he primary instruction is that a reasonable settlement should reflect what would have occurred if there had been an arm's-length negotiation between interested parties . . . This standard applies in every case in which the settlement represented by a . . . *Morris* agreement is subject to a review for reasonableness, whether the amount or judgment is stipulated to or whether the parties leave the amount open . . . [I]t is the absolute duty of the finder of fact to evaluate the evidence presented and determine what settlement amount the [claimant] has proved reasonable by a preponderance of the evidence . . . Not only does a soon-to-be-released insured not have a financial incentive to negotiate a reasonable settlement, the insured's counsel may run afoul of his legal and ethical duties if that counsel aggressively attempts to negotiate a . . . *Morris* agreement with a lower settlement amount. Such negotiations may put in peril the very agreement that could absolve his or her client (the insured) from all personal liability . . . Insured's counsel's own malpractice carrier would likely come calling if counsel's aggressive attempts to negotiate a lower number resulted in no agreement at all . . . [T]here are legal and ethical reasons, aside from the obvious lack of a client negotiating with his or her own resources, that a . . . *Morris* agreement is simply not (nor can it be) an arm's-length negotiation . . . [T]he reasonableness test . . . must be applied to every such agreement in which the insurer is entitled to contest the reasonableness of damages. The test is necessary to replace the strong and compelling dynamics that lead away from a reasonable damages figure as part of (or following) a . . . *Morris* agreement"). Yager's motion (Doc. 258) as to his fault is denied.

### **Doc. 249: Sale of Insurance without a License**

Girard seeks to prevent Yager from introducing any evidence that Girard's employees were selling insurance without a license. Girard argues that the only relevant issue is Girard's actual actions in either properly or improperly procuring insurance for the

clients at issue in this specific case; thus, Girard argues that whether its employees were selling insurance without a license is totally irrelevant and would therefore be unduly prejudicial. Yager argues that such evidence is highly relevant, and any prejudice is far outweighed by its probative value. Yager emphasizes that the evidence reflects that the only licensed agent connected to the Girard office in Nogales, Arizona actually lived in Las Vegas, that he provided inadequate training and supervision over his employees, and his employees did not have a proper understanding of the insurance products they were selling. Yager argues that such evidence is relevant to proving his claims for negligence and punitive damages, and are particularly probative to showing how Girard failed to meet the standard of care. The Court agrees with Yager, and finds that the relevance of the licensure issues is relevant and outweighs any undue prejudice; Girard's motion (Doc. 249) is denied.

**Doc. 250: Past Contact with Alonso Pastor**

Girard argues that any past contact with Alonso Pastor must be excluded as the only relevant issue is Girard's contact with Lopez. Specifically, Girard argues that Yager should not be able to introduce evidence that Girard added non-owned vehicles to Pastor's policy between 2011 and 2013. Girard argues that Yager seeks to improperly introduce this evidence to show that since Girard engaged in these past actions (i.e., adding non-owned vehicles to Pastor's policy), it must have known it was adding a non-owned vehicle as to Lopez in 2014. In contrast, Yager argues that such evidence is necessary: to refute Girard's position that it did not know that Pastor's policy added non-owned vehicles driven by others and that customers know that they have to own a vehicle to get it insured; to show Lopez's state of mind inasmuch as he knew that Pastor had added non-owned vehicles to his policy in the past; and that Girard routinely allowed the addition of non-owned vehicles to Pastor's policy without requesting ownership documentation. The Court finds this evidence to be probative and shall be admissible at trial; Girard's motion (Doc. 250) is denied.

**Doc. 255: Telephone Records**

Yager seeks to exclude Lopez's phone records. He primarily argues that there is insufficient foundation for them, they are irrelevant, and are hearsay. Girard argues that the phone records are relevant because Lopez claims that he called Girard three times prior to the November 2014 accident in relation to insurance issues. However, Lopez's phone records for his personal cell phone reflect that he never called Girard's business number prior to November of 2014 from that number, testimony from Lopez and Girard's employees at trial will establish the foundation for the phone numbers, and that such phone records fall within a hearsay exception as they are business records kept in the normal course of business. The Court finds that the phone records are relevant and admissible; Yager's motion is denied.

**Doc. 257: Non-Party at Fault (Lopez, Wilshire, Pastor); Doc. 254 (Pastor's Address); Doc. 251 (Pastor's Deposition Testimony)**

Yager argues that Girard's claims of fault on the part Lopez, Pastor, and Wilshire should be precluded at trial. Yager argues, for example, that it would be unjust to allow such claims at trial as there has been no disclosure of evidence supporting any fault as to them, and Girard failed to serve Yager with a notice disclosing them as non-parties at fault in accordance with the requirements of Arizona Rule of Procedure 26(b)(5)[7] which mandates preclusion of any consideration of their fault for failure to provide a proper non-party at fault notice. Girard does not dispute that it did not serve Yager with a non-party at fault notice as to Lopez, Pastor, and Wilshire. However, Rule 26(b)(5) is simply inapplicable to Lopez and Wilshire as they currently or were formerly named as parties to this case. *See* Rule 26(b)(5) (specifically stating that a non-party at fault notice is only required as to "any person: (A) not currently or formerly named as a party in the action."). In addition, through discovery and disclosure of information and evidence in the early stages of this case, Plaintiff has been on notice that Girard was casting fault on other parties in this case. For example, depositions and disclosures reflect Girard's continuing claim

---

[7] The parties do not dispute that this rule is applicable in federal court.

that Girard's employees were simply never informed (by either Pastor or Lopez) of Lopez's existence prior to the accident, and therefore they had no ability whatsoever to take any steps to ensure that Lopez received a proper insurance policy. While Rule 26(b)(5) is applicable to Pastor as he has never been a party to this action, exclusion of Girard's claims of fault as to Pastor is unwarranted as Yager has been on notice of Girard's claims of fault since the earlier stages of this litigation. *See Lyphomed, Inc. v. Superior Court*, 172 Ariz. 1158, 1160-65 (Ct. App. 1992) (recognizing that the purpose of the notice requirement of Rule 26(b)(5) is to deal with situations where the plaintiff is unaware of a nonparty's fault, and holding that where information, disclosures, and evidence early in the case clearly put plaintiff on notice of the pertinent non-parties at fault, consideration of these non-parties at fault could be considered at trial even though defendant failed to serve plaintiff with a non-party notice pursuant to Rule 26(b)(5) and did not fall within the specific provisions allowing relief for such failure in Rule 26(b)(5)). Yager's motion (Doc. 257) is denied.

Yager argues that Girard should be prevented from referencing Pastor's address in Mexico in relation to Girard's defense theory that Pastor improperly concealed his Mexican address, and instead fraudulently used Lopez's address in Arizona in the course of filling out applications to improperly obtain insurance. *See* Doc. 254. Yager argues there is no evidence to support this position, and that Girard untimely disclosed this defense theory. However, as referenced above, Girard has been claiming throughout this case that it was never aware of a need to obtain proper insurance for Lopez as neither Pastor, nor Lopez, ever informed Girard of Lopez's existence prior to the accident in this case; Girard's employee, Francine Dortch, testified to this at her deposition in June of 2017. Deposition testimony from an insurance company representative (Dan Braude), in September of 2017, also reflects that part of assessing risk in the underwriting process involves determining the radius of operation of a vehicle and the largest city entered. At his deposition in September of 2017, Lopez testified that Pastor listed Lopez's Arizona address on Pastor's insurance application because Pastor lived in Mexico; likewise, in a prior deposition in the separate State Case, Pastor testified that he was using Lopez's address for the last five years

because Pastor was living in Mexico. In January of 2018, Girard disclosed its expert report from Neal Bordenave whereby he opined that Pastor and Lopez conspired to withhold necessary information from Girard to obtain lower insurance premiums. In addition, another Girard employee stated that it normally does not sell insurance to non-Arizona residents, and when confronted with the information as to Pastor's address in Mexico at his deposition, Yager's own expert (Elliot Flood) stated that providing the wrong address (i.e., Lopez's address in Arizona, as opposed to Pastor's address in Mexico) on an insurance application was fraudulent. In light of the foregoing, Yager's motion (Doc. 254) as to Pastor's address is denied.

Girard seeks to exclude the deposition testimony of Pastor which was taken in the separate State Case. *See* Doc. 251. However, Yager's response indicates that Girard's motion is premature as Yager plans to subpoena Pastor to testify as a live witness at trial, and therefore use of his deposition testimony would be a non-issue if Pastor is present to testify at trial. The Court agrees. Live testimony at trial from Pastor is obviously preferable to deposition testimony; Yager shall make every reasonable effort to secure Pastor's presence at trial so the jury has the opportunity to fully evaluate Pastor's live testimony for credibility (i.e., the opportunity and ability to see or hear or know the things testified to, the clarity of his memories, the manner while testifying, any interest in the outcome of the case, any bias or prejudice, whether other evidence contradicted his testimony, the reasonableness of the testimony in light of all the evidence, and any other factors that impacted his believability). *See generally* Ninth Circuit Model Civil Jury Instruction 1.11. In the event Pastor does not appear for trial, Yager shall be prepared to detail the efforts he made to secure Pastor's presence at trial. As Girard's motion to exclude Pastor's deposition testimony is premature, Girard's motion (Doc. 251) is denied without prejudice.

### Doc. 252: Public Duty/Third Party Beneficiary

Girard argues that Yager is seeking to establish alternative theories of liability without support in Arizona law. Girard's motion reflects that it does not dispute the fact that if the jury finds that Girard actually had knowledge of Lopez's existence prior to the

accident, it could be liable for failure to properly procure insurance for Lopez. However, Girard points out that Yager also appears to be advancing alternative theories for liability (public duty/third party beneficiary) whereby Yager argues that even if the jury finds that Girard had no knowledge whatsoever of Lopez's existence prior to the accident, the jury could still find Girard liable for failure to properly procure insurance for Lopez even if Girard did not know that Lopez existed. The Court agrees with Girard that Arizona courts have previously rejected similar arguments made by Yager in his underlying State Action against Lopez and Pastor,[8] and there is no Arizona case supporting this position. Girard's motion (Doc. 252) is granted.

### Doc. 260: Social Security Decision and Treating Physicians

Girard seeks to exclude any reference to the April 10, 2018 Social Security Administration decision by an Administrative Law Judge which awarded Yager social security disability benefits ("SSD Decision"). The Court finds that the SSD Decision is irrelevant and unduly prejudicial as it not a traditional adversarial proceeding, Girard was not represented in that proceeding, the SSD matter involved different issues, evidence, and standards of proof, and would unduly influence the jury as it comes from a federal administrative law judge. See, *e.g.*, *Roach v. Hughes*, No. 4:13-CV-00136-JHM, 2016 WL 9460306, at *3–4 (W.D. Ky. Mar. 9, 2016) ("An SSA disability determination is of dubious probative value . . . The lack of a meaningful adversarial process with respect to the cause, existence, and extent of a plaintiff's alleged disability renders the SSA's conclusions on that issue unreliable."); *Sabo v. Fiskars Bands, Inc.*, No. 2:12-CV-00503-EJL, 2015 WL 12750276, at *4 (D. Idaho Dec. 4, 2015) (excluding ALJ decision in SSA proceeding because the "determination made in the social security proceeding was subject to different standards and requirements specific to that proceeding," the "decision is irrelevant to the issues before the jury," the decision "would be unduly prejudicial and confusing to the jury" under Fed. R. Evid. 402, 403, and the SSA decision goes to "the ultimate question

---

[8] *See* Ex. B to Doc. 252 (*Yager v. Lopez and Pastor*, Case No. C20150489, 3/2/16 Pima County Superior Court Order); *Yager v. Pastor*, 2016 WL6819666 (Ariz. Ct. App., 11/18/16 Opinion).

that the jury in this case must decide based upon the evidence admitted at trial."); *Howard v. Nucor-Yamato Steel Co.*, No. 3:14CV00202 JLH, 2015 WL 5634526, at *3 (E.D. Ark. Sept. 24, 2015) ("That the Social Security Administration determined [plaintiff] to be under a disability as that term is defined in the Social Security disability laws adds nothing to the medical records upon which that determination is based."). Any reference to the SSD Decision is not permitted at trial.

Girard also seeks to exclude testimony from Dr. Wild. Girard argues that Dr. Wild's testimony as to the extent and permanence of Yager's injuries, and his ability to work because of those injuries, must be excluded because Dr. Wild did not disclose a written expert report giving the grounds for his opinion as required by Rule 26(a)(2)(B). However, as Dr. Wild was Yager's treating orthopedic physician, it appears that Yager specifically disclosed Dr. Wild as a non-retained expert under the category of an expert that is not required to provide a written expert report under Rule 26(a)(2)(B). *See* Rule 26(a)(2)(C) (discussing experts that are not required to provide a report); *see also Gonzalez v. City of McFarland*, 2014 WL 5791010 at*9 (E.D. Cal. 2014) (a treating physician is neither retained nor employed to provide expert testimony). Thus, to the extent Dr. Wild actually treated Yager and formed opinions arising out of the course of treatment he gave to Yager, Dr. Wild's testimony in relation thereto is permissible.

Girard's motion (Doc. 260) is granted as to the SSD Decision, and is denied as to Dr. Wild.

**Doc. 262: Photos of Yager's Injuries**

Girard seeks to exclude post-accident photos of Yager's injuries. Girard argues that photos of Yager's injuries are gruesome and would simply spark an emotional response in jurors that would be unduly prejudicial to Girard. Girard argues that the injuries can be demonstrated in other ways such as through medical documentation and from testimony from Yager and his treating physicians. The Court finds that the motion is premature as neither party has attached any photos for the Court's review, and the Court does not have any context (as it would at trial) to evaluate the photos in light of the posture of what is

occurring in the midst of trial. As such, the motion (Doc. 262) is denied without prejudice.

**Doc. 244: Motion to Bifurcate Trial**

Lastly, Girard has moved to bifurcate the trial in this case whereby the jury would only hear evidence as to liability in the first phase of the case, and only if the jury decides that there is liability, the jury would then be allowed to hear evidence as to any damages; Girard argues that proceeding in this manner would save resources, avoid confusion, and avoid prejudice as to Girard, by creating a bright line between the issues of liability and damages. In this Court's discretion, the Court "may order a separate trial" for "convenience, to avoid prejudice, or to expedite and economize" as to particular issues or claims. *See* Fed. R. Civ. P. 42(b); *see also* Fed.R.Civ.P. 42 advisory committee's note (1966 Amendment) ("[S]eparation of issues for trial is not to be routinely ordered[.]"); *Miller v. Fairchild Industries, Inc.*, 885 F.2d 498, 511 (9th Cir. 1989) (remanding for a new trial and directing the trial court to reconsider its decision to bifurcate the trial into liability and damages phases as such issues at trial often overlap and separating the issues tends to create confusion and uncertainty); *DeAnda v. City of Long Beach*, 7 F.3d 1418, 1421 (9th Cir. 1993) (finding that the trial court abused its discretion in bifurcating the trial as to liability and remanding for a new trial); *Hangarter v. Provident Life and Accident Insurance Co.*, 373 F.3d 998, 1021 (9th Cir. 2004) (affirming the trial court's denial of a bifurcated trial, and emphasizing that the "district court's decision to decline to bifurcate the trial comported with normal trial procedure . . . [as] evidence usually overlaps . . . [and] the normal procedure is to try . . . claims together with appropriate instructions to . . . the jury . . ."). The Court, in its discretion, finds that a bifurcated trial is unwarranted as it is unnecessary for "convenience, to avoid prejudice, or to expedite and economize"; Girard's motion to bifurcate (Doc. 244) is denied.

**CONCLUSION**

Accordingly, IT IS HEREBY ORDERED as follows:

(1) The parties' motions in limine (Docs. 249, 250, 251, 252, 254, 255, 256, 257, 258, 260, 261, 262) are denied in part and granted in part as specifically discussed in the

text of this Order,[9] and Girard's motion to bifurcate the trial (Doc. 244) is denied.

(2) The parties' proposed joint pretrial order estimates that the trial will last six to seven days.  The Court has reviewed its calendar and is available to preside over this jury trial beginning on either **10/22/19, 11/19/19, or 1/7/20**.  The parties shall consult with each other, and their witnesses, to see if any of these dates are mutually agreeable.  If these dates do not work, the parties shall propose three more dates (subsequent to the 1/7/20 date) that are mutually agreeable to the parties.  By **7/26/19**, the parties shall file a notice with the Court indicating which of the Court's proposed dates works for them, or proposing three additional dates for trial.  After the Court has received the parties' notice, the Court will issue an Order setting the trial date, the date for the pretrial conference (which is typically the week before the trial), and deadlines for jury instructions, verdict forms, and proposed voir dire (which are all typically due two weeks before the pretrial conference).

Dated this 12th day of July, 2019.

Honorable James A. Soto
United States District Judge

---

[9] In ruling on the parties' motions in limine, the Court weighed the considerations in Rules 401, 402, and 403 as to the issues raised in each motion in limine.